FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Aug 20, 2018

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DEVIN B., | No. 1:17-cv-03143-MKD |
| Plaintiff, | ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| vs. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | ECF Nos. 15, 16 |

BEFORE THE COURT are the parties' cross-motions for summary judgment. ECF Nos. 15, 16. The parties consented to proceed before a magistrate judge. ECF No. 7. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court denies Plaintiff's motion (ECF No. 15) and grants Defendant's motion (ECF No. 16).

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

ORDER - 1

# STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The

party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that [s]he is not only unable to do [her] previous work[,] but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis

ORDER - 3

proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(c); 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite her limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's

RFC, the claimant is capable of performing work that she has performed in the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. § 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. § 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

ORDER - 5

**ALJ'S FINDINGS**

Plaintiff protectively filed an application for Title XVI supplemental security income benefits on May 31, 2013, alleging a disability onset date of June 10, 2010. Tr. 222-27, 250. The applications were denied initially, Tr. 117-25, and on reconsideration, Tr. 129-35. Plaintiff appeared at a hearing before an Administrative Law Judge (ALJ) on December 14, 2015. Tr. 41-83. At the hearing, Plaintiff amended her alleged onset date to May 31, 2013, the protective filing date. Tr. 49. On May 4, 2016, the ALJ denied Plaintiff's claim. Tr. 22-35.

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the date of application.[1] Tr. 24. At step two, the ALJ found Plaintiff has the following severe impairments: hearing loss; autistic disorder; affective disorder; anxiety disorder; organic mental disorder; borderline intellectual impairment; and learning disorder. *Id.* At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or

---

[1] In this finding, the ALJ lists the date the application was received by the Agency, Tr. 24, 222, and not the date the application was protectively filed, Tr. 250. However, for the remainder of the findings, the ALJ provides the protective filing date as the amended onset date. Tr. 35. Therefore, this is considered harmless scrivener's error.

ORDER - 6

medically equals a listed impairment. Tr. 25. The ALJ then concluded that

Plaintiff has the RFC to perform light work, with the following limitations:

> The claimant can lift up to 20 pounds occasionally, lift or carry up to
> 10 pounds frequently. She can stand or walk for approximately 6 hours
> and sit for approximately 6 hours per 8-hour workday with normal
> breaks. She can frequently climb ramps or stairs but should never climb
> ladders, ropes, or scaffolds. The claimant must avoid workplace
> hazards, such as working with dangerous machinery and working at
> unprotected heights. She can understand, remember, and carry out
> simple, repetitive tasks, but should not be expected to complete more
> complex or difficult tasks, consistently. The claimant is limited to a
> routine work environment. She is limited to performed work that is
> primarily performed independently (can work around coworkers, but
> not be required to engage in jobs that require ongoing teamwork,
> problem solving, or executive decision making). She can have only
> incidental interactions with the public (interaction with the public is not
> a required part of the job duties).

Tr. 27. At step four, the ALJ found that Plaintiff had no past relevant work. Tr.

33. At step five, the ALJ found that there were jobs that exist in significant

number in the national economy that Plaintiff could perform, such as

assembler/production, cleaner/housekeeping, packing line worker. Tr. 34-35, 79.

On June 23, 2017, the Appeals Council denied review, Tr. 1-8, making the

Commissioner's decision final for purposes of judicial review. *See* 42 U.S.C.

1383(c)(3); 20 C.F.R. §§ 416.1481, 422.210.

**ISSUES**

Plaintiff seeks judicial review of the Commissioner's final decision denying her supplemental security income benefits under Title XVI of the Social Security Act. ECF No. 15. Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ properly weighed the medical opinion evidence;

2. Whether the ALJ properly weighed the lay witness testimony;

3. Whether the ALJ properly weighed Plaintiff's symptom claims; and

4. Whether the ALJ made a proper step five determination.

ECF No. 15 at 5.

**DISCUSSION**

**A.    Medical Opinion Evidence**

Plaintiff contends the ALJ erred by failing to properly consider the opinions of examining psychologists Roland Dougherty, Ph.D. and Steve Becker, Ph.D. ECF No. 15 at 5-12.

There are three types of physicians and psychologists: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant but who review the claimant's file (nonexamining or reviewing physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (brackets omitted). "Generally, a treating physician's opinion carries more weight

than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Id*. "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id*. (citations omitted).

If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm. of Soc. Sec. Admin.,* 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)).

   *1. Roland Dougherty, Ph.D.*

Dr. Dougherty completed a Psychological Evaluation on October 28, 2013. Tr. 404-20. He diagnosed Plaintiff with major depressive disorder, generalized anxiety disorder, Asperger's syndrome, post-traumatic stress disorder (PTSD),

probable mathematics learning disorder, and central auditory processing disorder.

Tr. 409. Dr. Dougherty provided the following medical source statement:

> I believe that she has ability to perform detailed and complex tasks, though she may need some direction and reminders. She should be able to accept instructions from supervisors though she may need some repetition of directions.
>
> She should be able to interact with co-workers and the public, though she is likely to have difficulty in reading social cues and would probably do best in an environment in which such interactions are limited.
>
> She may have some difficulty maintaining regular attendance in the workplace, especially in a full-time job, due to the presence of significant depression and anxiety. For the same reasons, she is likely to have some difficulty in completing a normal workday/workweek without interruption from her depression and anxiety. Her cognitive difficulties are also likely to significantly affect her ability to work.
>
> For the same reasons, she is likely to have some difficulty in dealing with the stress encountered in the workplace.

Tr. 409-10.

The ALJ gave this opinion some weight. Tr. 31. Because portions of Dr. Dougherty's opinion was contradicted by the opinions of Dr. Gardner and Dr. Staley, Tr. 95-96, 111-12 (limiting Plaintiff to simple and routine tasks), the ALJ was required to provide specific and legitimate reasons for rejecting Dr. Dougherty's opinion. *Bayliss*, 427 F.3d at 1216.

The ALJ found that Dr. Dougherty's opinion was "somewhat equivocal," and since the RFC is the most a claimant can do, he found that a limitation to

"simple and repetitive tasks only and limited the claimant's social interaction to reduce stress and demands on multitasking," was supported. Tr. 32. Plaintiff argues that Dr. Dougherty's opinion is not equivocal, and the ALJ failed to include Dr. Dougherty's findings that Plaintiff "could not manage her own funds, may need repetition of directions, may have difficulty maintaining regular attendance, would likely have difficulty completing a normal workday/workweek without interruptions, and would likely have some difficulty with the stress encountered in the workplace." ECF No. 15 at 6. "[T]he ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Despite Plaintiff's assertions otherwise, Dr. Dougherty's statements are not discrete limitations. The possibility of a limitation is not a limitation, let alone an indicator as to the severity of such potential limitation. Therefore, the ALJ's determination limiting Dr. Dougherty's opinion to the discrete limitations he set forth is within the discretion of the ALJ.

Of the discrete limitations the Dr. Dougherty's opinion, the ALJ rejected the ability to complete detailed and complex tasks. Tr. 32. Instead, the ALJ found Plaintiff was limited to simple and repetitive tasks. *Id*. The ALJ provides little discussion as to why he rejected this portion of Dr. Dougherty's opinion. *Id*. However, finding Plaintiff more limited than an examining provider opines is harmless error. *Tommasetti*, 533 F.3d at 1038 (an error is harmless when "it is

clear from the record that the . . . error was inconsequential to the ultimate nondisability determination"). Therefore, the Court will not disturb the weight assigned to Dr. Dougherty's opinion.

### 2. Steve Becker, Ph.D.

In June and July of 2010, Dr. Becker evaluated Plaintiff. Tr. 328-35. He diagnosed her with Asperger's Syndrome with a self-defeating personality style and comorbid, recurrent depressive episodes associated with Asperger's. Tr. 332. Dr. Becker stated the following:

> I do believe that Devin is employable and that she will be able to get a job, but care must be taken to match her skills with a job that will not require much contact with the public. She will need an understanding, tolerant employer who is willing to establish firm behavioral expectations while also being patient at teacher her the ropes.

*Id*. He recommended that Plaintiff relocate to the Seattle-Bellevue area to be closer to agencies serving adults with disabilities. Tr. 333. Additionally he recommend that Plaintiff "be referred to the Social Security Administration for eligibility for Supplemental Security Income, which would provide her with supportive monies while she seeks employment, and medical insurance." Tr. 334. He found that she "should also seek eligibility with the Washington State Division of Vocational Rehabilitations. She is clearly eligible due to her Asperger's Syndrome and hearing problems, and is ready for employment." *Id*.

The ALJ summarized Dr. Becker's opinion in her decision as "Dr. Becker opined that the claimant was employable, but that she would need a job that does not require much contact with the public (Ex. 1F/5). The claimant would benefit from a referral to Department t of Vocational Rehabilitation (DVR) to help her find employment (Ex. 1F/7)." Tr. 32. The ALJ gave this opinion some weight with great weight to the finding that Plaintiff is employable. *Id*.

Plaintiff asserts that if Dr. Becker's opinion, read in full, provides additional narrative functional assessments that would result in disability. ECF No. 15 at 10-11. Specifically, Plaintiff asserts that Dr. Becker found her eligible for supplemental security income, and that the requirement of an "understanding, tolerant employer," "significant support" from family, and a supportive "translator" amounted to a limitation to a sheltered work environment. *Id*. at 11. Plaintiff's argument amounts to a different interpretation of the evidence, and not a challenge of the ALJ's rejection of any discrete limitations. *See Tommasetti*, 533 F.3d at 1041 ("the ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence."); *Tackett*, 180 F.3d at 1097 (If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ.). Dr. Becker's discrete opinion is that Plaintiff is employable. Tr. 332. Dr. Becker's additional narrative discussion regarding how Plaintiff achieves employment is a road map for Plaintiff and her family. Tr. 332-35. Reading Dr.

Becker's ten point list as discrete limitations in an RFC is a different interpretation of the evidence. Therefore, the Court will not disturb the ALJ's interpretation of the opinion or the weight assigned to the opinion.

**B.    Lay Witness Testimony**

Plaintiff challenges the ALJ's treatment of testimony evidence from Amanda St. John, Plaintiff's aunt, and Plaintiff's mother. ECF No. 15 at 13-16.

Lay witness testimony is "competent evidence" as to "how an impairment affects [a claimant's] ability to work." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006); *see also Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993) ("[F]riends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to [his] condition."). An ALJ must provide "germane" reasons to discount evidence from lay witnesses. *Dodrill*, 12 F.3d at 919.

*1.    Amanda St. John*

Ms. St. John was Plaintiff's job coach through DVR and provided a letter on December 26, 2013. Tr. 295-96. She stated that Plaintiff had an Auditory Processing disorder and struggled in large crowds and in settings with more than one source of noise. Tr. 295. Additionally, Ms. St. John stated that Plaintiff experienced poor discrimination of fine acoustic differences in speech, a deficit in the ability to perform intersensory or interhemispheric communication, a deficit in

the ability to use prosodic features of target, a deficit in applying the rules of language to acoustic signal, and a deficit in the ability to organize, sequence, plan or recall appropriate responses. *Id*.

The ALJ gave the opinion some weight, stating that it was consistent with a limitation to simple and repetitive tasks and limited social interaction, but that she was not persuaded that Plaintiff "is as limited as alleged by Ms. St. John, as discussed above (Ex. 5F, 11F, and 12F)." Tr. 33.

Plaintiff asserts that the ALJ failed to account for Ms. St. James' statement that she has difficulty completing tasks, arguing that a person off-task more than 10% of the time is unemployable. ECF No. 15 at 12. Ms. St. James stated that Plaintiff "struggles with completing tasks, particularly when they involve several steps. She can complete a task that has three steps. Task that contains more than three steps, [Plaintiff] struggles remember the steps and has difficulty completing the task." Tr. 295. However, the ALJ's determination limits Plaintiff to "simple, repetitive tasks, but [she] should not be expected to complete more complex or difficult tasks, consistently." Tr. 27. This addresses Ms. St. James' statement regarding the completion of tasks. Once again, Plaintiff argues an alternative interpretation of the evidence. Specifically, she contends that a difficulty completing tasks will result in her being off task, while the ALJ interpreted the statement as limiting the complexity of the tasks. Therefore, the ALJ did not error.

*See Tackett*, 180 F.3d at 1097 (If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ.).

### 2.    *Plaintiff's Aunt*

Plaintiff's aunt completed a Third-Party Function Report on May 20, 2014. Tr. 317-24.  The ALJ gave this opinion "little weight" for the same reasons that Plaintiff's subjective complaints were discounted.  Tr. 32.  An ALJ may reject lay witness testimony for the same reasons she discounted claimant's allegations when the testimony is similar.  *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009).

Here, the aunt's statements are similar to Plaintiff's allegations.  Both address being the auditory processing disorder, Asperger's, vision problems, and being overwhelmed/shut down/meltdown around other people, Tr. 47, 51-52, 66, 323-24, and experiencing panic, anxiety, and depression, Tr. 50, 320.  The similarities between Plaintiff's allegations and her aunt's statements are highlighted when Plaintiff's Function Report is compared to her aunt's.  Tr. 268-75, 317-24  (needs reminders, can prepare simple meals, does not drive, overwhelmed in stores, cannot handle money, difficulty following spoken instructions, and difficulties in dealing with stress and change).  As discussed below, the ALJ provided sufficient reasons for discounting Plaintiff's symptom

statements.  Therefore, the ALJ's reason is supported by substantial evidence and is germane to Plaintiff's aunt and her statement.

### 3.     Plaintiff's Mother

Plaintiff's mother testified at the hearing regarding Plaintiff's difficulty completing tasks, her difficulty driving, her need to be in the same seat in school, her meltdowns, and that she lost her last job because she could not complete a series of tasks in succession.  Tr. 69-77.  The ALJ found that the need to provide repeated instructions for household chores is inconsistent with Plaintiff's completion of a degree in Communications.  Tr. 32.[2]  A claimant's reported activities may be seen as inconsistent with the presence of a disabling condition.

_____

[2] The ALJ stated "[t]he claimant's mother testified she had to repeatedly give the claimant instructions on tasks, including things such as doing the dishes, the evidence revealed that the claimant was able to graduate from college."  Tr. 32.  However, Plaintiff's mother did not testify regarding Plaintiff's ability to wash the dishes.  Tr. 69-77.  She testified that she had to repeatedly instruct Plaintiff on how to sort laundry.  Tr. 71.  However, Plaintiff failed to raise this issue in her briefing.  ECF No. 15 at 16-17.  Therefore, the Court will not consider the ALJ's misrepresentation of the testimony.  *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155 1161 n.2 (9th Cir. 2008).

ORDER - 17

*Curry v. Sullivan*, 925 F.2d 1127, 1130 (9th Cir. 1990). Plaintiff asserts that the reliance on the completion of the degree is misplaced because it was completed prior to Plaintiff's onset. ECF No. 15 at 16-17. However, Plaintiff's mother did not indicate that the need to repeat instructions was new or had worsened following onset. Instead, she stated that she has had to repeat instructions Plaintiff's entire life: "and this is something that, you know, we've gone over numerous, numerous times in the last, you know 32 years of her life to help her to see those differences, and she does, it's just something that is beyond her." Tr. 71. Therefore, the ALJ's conclusion that Plaintiff's need to have instructions repeated frequently in order to complete household chores as inconsistent with the abilities required to complete a college degree is a germane reason.

## C.     Plaintiff's Symptom Claims

Plaintiff faults the ALJ for failing to rely on reasons that were specific, clear and convincing in rejecting her symptom claims. ECF No. 15 at 17-21.

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks omitted). "The claimant is not required to show that her impairment could reasonably be

ORDER - 18

expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted). Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (quoting *Lester*, 81 F.3d at 834); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to produce some of the alleged symptoms, but that her statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely consistent with the medical evidence and other

evidence in the record.  Tr. 30.

### 1. Objective Medical Evidence

The ALJ found that Plaintiff's statements were inconsistent with the

objective medical evidence, stating that "the objective findings in this case fails to

provide strong support for the claimant's allegations of disabling symptoms and

limitations."  Tr. 28-30.  An ALJ may cite inconsistencies between a claimant's

testimony and the objective medical evidence in discounting the claimant's

testimony.  *Bray*, 554 F.3d at 1227; *see Rollins v. Massanari*, 261 F.3d 853, 857

(9th Cir. 2001) (Although it cannot serve as the sole ground for rejecting a

claimant's credibility, objective medical evidence is a "relevant factor in

determining the severity of the claimant's pain and its disabling effects.").

Plaintiff failed to specifically challenge this reason in her briefing when

discussing the ALJ's treatment of her symptom claims.  EFC No. 15 at 18-22.  As

such, the Court is not required to address this reason.  *See Carmickle*, 533 F.3d at

1161 n.2 (9th Cir. 2008).  The Ninth Circuit explained the necessity for providing

specific argument:

> The art of advocacy is not one of mystery.  Our adversarial system relies
> on the advocates to inform the discussion and raise the issues to the
> court.  Particularly on appeal, we have held firm against considering
> arguments that are not briefed.  But the term "brief" in the appellate
> context does not mean opaque nor is it an exercise in issue spotting.
> However much we may importune lawyers to be brief and to get to the
> point, we have never suggested that they skip the substance of their
> argument in order to do so.  It is no accident that the Federal Rules of

ORDER - 20

Appellate Procedure require the opening brief to contain the "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies." Fed. R. App. P. 28(a)(9)(A). We require contentions to be accompanied by reasons.

*Independent Towers of Wash. v. Wash.*, 350 F.3d 925, 929 (9th Cir. 2003).[3]

Moreover, the Ninth Circuit has repeatedly admonished that the court will not "manufacture arguments for an appellant" and therefore will not consider claims that were not actually argued in appellant's opening brief. *Greenwood v. Fed. Aviation Admin.*, 28 F.3d 971, 977 (9th Cir. 1994). Because Plaintiff failed to provide adequate briefing, the Court declines to consider this issue.

Even if reliance on this reason was error, any error resulting from the ALJ's reliance on this reason would be harmless as the ALJ provided other legally sufficient reasons to discount Plaintiff's symptom claims. *See Carmickle,* 533 F.3d at 1163 (upholding an adverse credibility finding where the ALJ provided four reasons to discredit the claimant, two of which were invalid); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (affirming a credibility finding where one of several reasons was unsupported by the record); *Tommasetti*, 533 F.3d at 1038 (an error is harmless when "it is clear from the record that the . . .

---

[3] Under the current version of the Federal Rules of Appellate Procedure, the appropriate citation would be to FED. R. APP. P. 28(a)(8)(A).

ORDER - 21

error was inconsequential to the ultimate nondisability determination").

   2. *Inconsistent Statements*

   The ALJ found that Plaintiff made inconsistent statements regarding the success of her FM device. Tr. 29. Again, Plaintiff failed to challenge this reason, ECF No. 15 at 18-22. Therefore, the Court is not required to address it. *See Carmickle*, 533 F.3d at 1161 n.2. However, the Court concludes that the ALJ's reason is specific, clear and convincing and supported by the record. In determining the reliability of Plaintiff's statements about the effects of her impairments, the ALJ may consider "ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements . . . and other testimony by the claimant that appears less than candid." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). At the hearing, Plaintiff testified that she has tried FM devices over the years, but it "doesn't really work to be honest." Tr. 55. Yet the medical records show that Plaintiff was given an FM device in September of 2013 and her response was "excellent." Tr. 489. In the first week, she reported that it was increasing her self-confidence. Tr. 435. A week later, she again stated that the device was changing her self-confidence and sense of identity. Tr. 434. In February of 2014, Sonja Wright, ARNP found that Plaintiff was using hearing aids successfully. Tr. 534. As such, this was a specific, clear and convincing, and

unchallenged reason to discount Plaintiff's symptom statements.

### 3. Daily Activities

The ALJ found that Plaintiff's alleged symptoms were inconsistent with her reported activities. Tr. 30-31. A claimant's daily activities may support an adverse credibility finding if (1) the claimant's activities contradict her other testimony, or (2) "the claimant is able to spend a substantial part of [her] day engaged in pursuits involving performance of physical functions that are transferable to a work setting." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). "The ALJ must make 'specific findings relating to [the daily] activities' and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination." *Id*. (quoting *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005)). A claimant need not be "utterly incapacitated" to be eligible for benefits. *Fair*, 885 F.2d at 603.

The ALJ referenced Plaintiff's completion of a bachelor's degree in Communications, her work in her father's restaurant, and her ability to follow the consultative examiner's instructions. Tr. 30. Additionally the ALJ referred to Plaintiff's statements that she was good at detailed work and data entry, she was able to read and write for long periods of time, and she was able to type well and had better than basic computer skills. *Id*. The ALJ found that "this level of

functioning is inconsistent with the claimant's allegation, that she needs written instructions to complete simple household chores, like washing dishes." *Id*. Additionally, the ALJ found that "[s]ome of the mental abilities and social interactions required in order to perform these activities are the same as those necessary for obtaining and maintaining employment," *Id*., and that these "activities demonstrate sufficient attention, concentration, as task persistence to complete routine activities," Tr. 31. The ALJ noted that Plaintiff was able to interact with others as needed to attend medical appointments, visit family, and perform other necessary activities. *Id*.

Here, the ALJ addressed both how Plaintiff's activities are inconsistent with her alleged symptoms and how her activities demonstrate functions that are transferable to the workplace. Plaintiff only challenges the ALJ's reliance on the completion of the degree in Communications and the ability to type. ECF No. 15 at 18-19. However, even if these activities were removed from the ALJ's analysis, there are still inconsistences between Plaintiff's activities and her alleged severity of symptoms. The ALJ found that Plaintiff's ability to read and write for extended periods, Tr. 408, is inconsistent with her alleged inability to concentrate and maintain persistence and pace. Tr. 30. The ALJ also found Plaintiff's ability to follow instructions during detailed testing and her report that she was good at data entry and detailed work was inconsistent with her alleged limited ability to

maintain concentration, persistence, and pace. Tr. 30 (citing Tr. 409, 406).

Therefore, the ALJ's reason is specific, clear and convincing.

### 4. *Improvement with Medications*

The ALJ found that Plaintiff reported improvement with appropriate

medication. Tr. 30. If an impairment can be effectively controlled with

medication, it is not disabling for the purposes of determining eligibility for

supplemental security income benefits. *Warre v. Comm'r of Soc. Sec. Admin.*, 439

F.3d 1001, 1006 (9th Cir. 2006). In March of 2015, Plaintiff reported a good

baseline control of her depression and anxiety with her venlafaxine for the last ten

years, but stated she still had acute worsening of symptoms associated with

menstruation. Tr. 554. Therefore, her provider increased her dosage for the

second half of her cycle to control the increase in symptoms. *Id*. However, there

is no indication that this increase in mediation assisted in controlling the increased

symptoms. At her next appointment in April of 2015, Plaintiff was treated for an

ovarian cyst and urinary tract infection, but there was no discussion regarding her

depression and anxiety. Tr. 551-53. Plaintiff was seen again in June of 2015 for

the placement of an IUD and her provider again told her to increase her

antidepressant during the last two weeks of her cycle to see if it controlled her

increased symptoms. Tr. 548. Therefore, the ALJ's determination that her

symptoms are controlled by medications is not supported by substantial evidence.

However, any error resulting from the ALJ's determination that Plaintiff's depression and anxiety are controlled with medication is harmless because the ALJ provided other legally sufficient reasons supported by substantial evidence to support her determination. *See Carmickle,* 533 F.3d at 1163 (upholding an adverse credibility finding where the ALJ provided four reasons to discredit the claimant, two of which were invalid); *Batson*, 359 F.3d at 1197 (affirming a credibility finding where one of several reasons was unsupported by the record); *Tommasetti*, 533 F.3d at 1038 (an error is harmless when "it is clear from the record that the . . . error was inconsequential to the ultimate nondisability determination").

### 5. *Lack of Treatment*

The ALJ found that Plaintiff's statements about her mental health symptoms were inconsistent with the minimal treatment she received. Tr. 30-31. Noncompliance with medical care or unexplained or inadequately explained reasons for failing to seek medical treatment cast doubt on a claimant's subjective complaints. *Fair*, 885 F.2d at 603; *Macri v. Chater*, 93 F.3d 540, 544 (9th Cir. 1996). Failure to follow a course of treatment may be excused, however, if the claimant cannot afford the treatment. *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995). The ALJ determined that Plaintiff's alleged symptoms of depression and anxiety were inconsistent with her limited therapy. Tr. 30-31. The ALJ found that Plaintiff participated in therapy from June of 2013 to December of 2013 and that

ORDER - 26

the record did not indicate any additional therapy, frequent medical adjustments, crisis intervention, inpatient psychiatric hospitalizations, or other intensive mental health treatment. *Id*. In an undated statement contained in the middle of her counseling records, Plaintiff stated that she was unemployed, had no medical insurance, and was unable to seek therapy for her PTSD. Tr. 425. However, her therapy records show that in 2013 she was enrolling in health insurance benefits for 2014. Tr. 422. Records from 2015 state that she had insurance. Tr. 513, 516. Considering Plaintiff's statement regarding the lack of insurance and funds to secure therapy is undated and there is evidence that she potentially had insurance in 2014 and did have insurance in 2015, the ALJ's conclusion that Plaintiff's lack of counseling after December of 2013 was inconsistent with her alleged severity of symptoms is supported by substantial evidence and specific, clear and convincing.

### 6. *The ALJ's Observations*

The ALJ noted that Plaintiff related well to her at the hearing and that she answered questions appropriately without any significant signs of inattention, distractibility, or confusion. Tr. 31. An ALJ's reliance on her personal observations of a claimant at the hearing has been condemned as "sit and squirm" jurisprudence. *Perminter v. Heckler*, 765 F.2d 870, 872 (9th Cir. 1985) (citation omitted). The practice has generally been met with disapproval and may not form the sole basis for discounting a claimant's symptom claims. *Orn*, 495 F.3d at 639.

Because the ALJ's observations of Plaintiff did not form the sole basis for determination, the ALJ did not err by including her observations in the analysis. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (internal quotations omitted).

### 7. Reason for Stopping Work

The ALJ noted that Plaintiff stopped working at her last job because the funding for her position ended. Tr. 31. An ALJ may consider that a claimant stopped working for reasons unrelated to the allegedly disabling condition in evaluating a Plaintiff's symptom complaints. *See Tommasetti*, 533 F.3d at 1040; *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001). The record supports the ALJ's conclusion. When she applied for benefits Plaintiff stated that she stopped working because of her conditions and because the position ended. Tr. 255. Plaintiff reported to Dr. Dougherty that her last job was at a small office, but the funding was lost. Tr. 406. Notably, Plaintiff reported to Dr. Dougherty that she was good at data entry. *Id.* At the hearing, Plaintiff testified that her last job was doing data entry at an insurance office. Tr. 53. She reported that the job ended "[m]ainly because I wasn't able to perform the duties necessary for the job." Tr. 53. She did not mention that the funded ended. Tr. 53-54. Additionally, at the hearing, Plaintiff's mother testified that her job at the insurance company ended because she could not consistently perform the job duties. Tr. 73-74. Here, the

record is ambiguous. There is evidence to support the ALJ's determination that Plaintiff's job ended because the funding ended, and there is evidence to support Plaintiff's assertion that it was because she could not perform the job requirements. Therefore, the Court finds that the ALJ's interpretation of the evidence controls and this reason is specific, clear and convincing. *Tackett*, 180 F.3d at 1097 (If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ.).

**D.    Step Five**

Plaintiff challenges the ALJ's step five determination arguing that due to a formatting error in the decision, the ALJ failed to meet her burden. ECF No. 15 at 21.

At step five, the burden of proof shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran*, 700 F.3d at 389. In the decision, the ALJ used a table to set forth the three jobs she found Plaintiff could perform based on her RFC, age, education, and work history and the testimony of the vocational expert. Tr. 34-35. This table is formatted in such a manner that the beginning of each word in the cell is cut-off. *Id*. Essentially, this amounts to a scrivener's error. When the table is read in conjunction with the vocational expert's testimony, it is easily attainable that the

ALJ found Plaintiff capable of assembler production, cleaner housekeeping, and packing line worker. Tr. 34-35, 79. As such, the Court finds the error harmless. *See Tommasetti*, 533 F.3d at 1038 (an error is harmless when "it is clear from the record that the . . . error was inconsequential to the ultimate nondisability determination"); *Molina*, 674 F.3d at 121 ("Even when an agency explains its decision with less than ideal clarity we must uphold it if the agency's path may reasonable be discerned." (internal quotation marks omitted)).

## CONCLUSION

**IT IS ORDERED:**

1. Plaintiff's motion for summary judgment (ECF No. 15) is **DENIED**.

2. Defendant's motion for summary judgment (ECF No. 16) is **GRANTED.**

The District Court Executive is directed to file this Order, enter **JUDGMENT FOR THE DEFENDANT,** provide copies to counsel, and **CLOSE THE FILE.**

DATED August 20, 2018.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE

ORDER - 30